UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                            )
CHANGQING SUN and YAN ZHAO,                 )   No. C07-0083RSL
                                            )
                        Plaintiffs,         )   ORDER DEFERRING PLAINTIFFS'
        v.                                  )   MOTION FOR SUMMARY
                                            )   JUDGMENT AND DENYING
ROBERT S. MUELLER, *et al.*,                )   DEFENDANTS' MOTION
                                            )   TO DISMISS
                        Defendants.         )
_____)

## I. INTRODUCTION

This matter comes before the Court on "Plaintiffs' Motion for Summary Judgment" (Dkt. #10) and "Defendants' Cross-Motion to Dismiss" (Dkt. #11). On January 18, 2007, plaintiffs, proceeding pro se, filed a complaint alleging that defendants have unreasonably delayed processing of plaintiffs' I-485 applications for adjustment of status. See Dkt. #1. In their motion for summary judgment, plaintiffs now seek an order requiring United States Citizenship and Immigration Services ("USCIS") to adjudicate the I-485 applications. In opposition, defendants cross-move to dismiss contending that this action should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(b)(ii) and under the Administrative Procedures Act ("APA"), and that plaintiffs cannot meet the strict requirements for mandamus relief. For the reasons discussed below, the

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS

Court defers plaintiffs' motion for summary judgment, and denies defendants' cross-motion to dismiss.[1]

## II. FACTUAL BACKGROUND

Plaintiffs Changqing Sun and Yan Zhao (hereinafter "plaintiffs"), husband and wife, and citizens of the People's Republic of China, seek adjudication of their pending Form I-485 Applications for Adjustment of Status so that they may adjust their U.S. immigration status to that of Lawful Permanent Residents (LPR or "green card" holders).  Plaintiffs filed their I-485 forms with United States Citizen Immigration Services ("USCIS") Nebraska Service Center on either January 6, 2005 or January 11, 2005.  See Dkt. #12, (Jacobson Decl.) at ¶¶3-4.[2]

When an individual files an I-485 application, USCIS conducts several forms of background checks to ensure that the applicant is eligible to adjust status to lawful permanent resident and that he or she is not a risk to national security or public safety.  Id. (Jacobson Decl.) at ¶9.  One of those checks is an FBI fingerprint check for relevant criminal history records on the alien.  Id.  The fingerprint check must be less than fifteen months old at the time the application is adjudicated.  Id. at ¶13.  Plaintiffs were each fingerprinted on February 28, 2005 and May 26, 2006 to ensure that their fingerprint checks remain current.  Id.

---

[1] In a separate action in this judicial district styled Chen v. Chertoff, et. al., Case No. C06-1760TSZ, the Honorable Thomas S. Zilly analyzed some of the same legal arguments that plaintiffs raise here in their for summary judgment.  See Dkt. #20 in C06-1760TSZ (filed August 30, 2007).  In the interest of judicial economy, this Court incorporates a substantial part of the well-reasoned opinion of Judge Zilly into this order, and for the convenience of the parties and for clarity in the record, the Court reiterates the legal analysis below.

[2] There appears to be disagreement about when exactly plaintiffs filed their I-485 forms with USCIS.  While Neil M. Jacobson's declaration (Jacobson is the Acting Service Center Director of the Nebraska Service Center) puts the date at January 6, 2005, plaintiffs in their motion for summary judgment and defendants' in their response both state the date as January 11, 2005.  The Court need not resolve this disparity as it is not material to the motions presently before the Court.

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                                                       -2-

Another check is conducted against the Interagency Border Inspection System ("IBIS"), which contains information related to persons who are wanted or under investigation for serious crimes of suspected terrorism-related activity. Id. at ¶9. Plaintiffs' preliminary IBIS background checks have been completed. Id. at ¶14. Any remaining IBIS checks, if necessary, will be performed at the time of final adjudication of the applications. Id.

In addition to the fingerprint and IBIS background checks, an FBI name check is run against FBI investigative databases. Id. at ¶9; see also Dkt. #13 (Cannon Decl.) ¶¶4-12 (describing name check process). The FBI received a request from USCIS for a "name check" investigation for plaintiffs on or about February 4, 2005. See Dkt. #13 (Cannon Decl.) at ¶¶36-37. Plaintiff Zhao's name check was completed by the FBI on March 1, 2007 and forwarded on to USCIS in Washington, D.C. Id. at ¶37. Because plaintiff Sun's name check has not been completed by the FBI, plaintiffs' applications remain pending.[3] Id. at ¶36. The results of plaintiff Sun's name check will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol. Id. The FBI cannot provide a specific or general time frame for completing any particular name check submitted by USCIS. Id. at ¶34.

Historically, approximately 68 percent of the name checks submitted by USCIS are electronically checked and returned to USCIS as having "No Record" within 48-72 hours. Id. at ¶13. A "No Record" indicates that the FBI's Universal Index database contains no identifiable information regarding a particular individual. Id. For the remaining name check requests, a manual name search typically completed within 30-60 days historically identifies an additional 22 percent of the USCIS requests as having "No Record," for a 90 percent overall "No Record" response rate. Id. at ¶14. Follow-up on the remaining 10 percent requires retrieving and

---

[3] Plaintiff Zhao's derivative application for adjustment of status cannot be adjudicated until Plaintiff Sun's is completed. See Dkt. #12 (Jacobson Decl.) at ¶7.

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                -3-

reviewing electronic and paper records. See id.

There are numerous factors that contribute to delays in the processing of name check requests. Id. at ¶¶21, 34. One is the volume of incoming name checks. Incoming name checks, averaging about 71,000 per week, outpace completed name checks, averaging about 68,000 name checks per week. Id. at ¶21. The number of "hits" on a name when it is first reviewed may further contribute to a delay in processing a name check request. Id. at ¶22. The processing of common names also contributes to a delay and the accessibility of the FBI record needed for review also contributes to a delay; a record could be at one of over 265 possible locations across the country. Id. at ¶¶ 23-24. None of these reasons for delay, however, has been cited as a reason why plaintiff Sun's name check has been delayed.

As directed by USCIS, the FBI processes name check requests on a "first in, first out" basis, unless USCIS directs that a name check be expedited. Id. at ¶25. Expedited name requests mean that an employee is not available to work on a normal name check request. Id. at ¶25. An alien who has applied for adjustment of status may apply for and obtain employment authorization for the time the application is pending. See Dkt. #12 (Jacobson Decl.) at ¶18. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Id. Plaintiffs each currently hold an employment authorization document valid through November 29, 2007 and an advance parole travel document valid to November 20, 2007. Id. Additionally, plaintiff Sun has non-immigrant status as an H-1B temporary worker for Microsoft which is valid through July 27, 2007. Id.

### III.  LEGAL DISCUSSION

In their motion, plaintiffs ask the Court to enter an order requiring defendants to expeditiously complete their security check and to require USCIS to process their case to conclusion. See Motion at 2. In response, defendants filed a cross-motion to dismiss. The Court first addresses defendants' cross-motion to dismiss.

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                                -4-

**A.     Defendants' Motion to Dismiss**

Defendants contend that the Court lacks subject matter jurisdiction under either 8 U.S.C. § 1252(a)(2)(b)(ii) or the Administrative Procedures Act ("APA") and that plaintiffs cannot meet the strict requirements for mandamus relief. These same legal arguments have recently been considered and rejected by this Court and other courts in this district. See Chen v. Heinauer, 2007 WL 1468789 (W.D. Wash. May 18, 2007); Huang v. Gonzalez, Case No. C07-0096RSM (W.D. Wash. May 2, 2007). For the same reasons articulated in those orders, defendants' motion to dismiss is denied.

**B.     Plaintiffs' Motion for Summary Judgment**

Plaintiffs base their mandamus action on Sections 555(b) and 706(1) of the APA, which require plaintiffs to demonstrate that USCIS unreasonably delayed the processing of plaintiffs' applications. See 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed"); see Yu v. Brown, 36 F. Supp. 2d 922, 928 (D.N.M. 1999) (applying the same standards to assess the merits of claims of unreasonable agency delay that seek either mandamus or a mandatory injunction under the APA, or both). Thus, the critical question before the Court is whether there has been an unreasonable delay by USCIS in processing plaintiffs' applications to adjust status.

Section 706 of the APA "leaves in the courts the discretion to decide whether agency delay is unreasonable." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999). The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. § 706(1):

> (1) the time agencies take to make decisions must be governed by a 'rule of reason';

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                                    -5-

>(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
>(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
>(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
>(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
>(6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting Telecomms. Research & Action v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984) (six factors referred to as the "TRAC factors")).

The first TRAC factor requires an agency to govern decision-making with a rule of reason. Defendants do not address these factors in their response, but argue that the FBI is "proceeding in an orderly fashion with the completion of name checks in the order in which they are received" and that the FBI needs time to perform an "accurate and thorough" name check. See Cross-Motion at 13. As plaintiffs point out, however, defendants have not provided any evidence confirming that plaintiffs' check has been processed in a "first in, first out" fashion. Nor has the FBI provided any evidence as to why it needs many years to conduct an "accurate and thorough" check on plaintiffs.

The second TRAC factor requires deference to a statutory or regulatory timetable. Defendants argue that there is neither a statutory nor regulatory timetable in place for the FBI name check or USCIS's adjudication of an application to adjust status and that in the absence of any guidelines, the Court should consider the factors that contribute to the backlogs faced by the FBI and USCIS. See, e.g., Dkt. #13 (Cannon Decl.) ¶¶ 16-17 (describing growth of the name

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                          -6-

check program and the implementation of more thorough searches since November 2002 due to heightened national security concerns). Several courts facing the same issue have concluded that "[a]lthough Congress has not established a mandatory time frame for the USCIS to complete the adjudication, Congress sets a normative expectation in 'The Immigration Services and Infrastructure Improvements Act of 2000' of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application." Konchitsky, 2007 WL 2070325 at *4 (citing 8 U.S.C. § 1571); Abbasfar v. Chertoff, 2007 WL 2409538 at *3 (N.D. Cal. Aug. 21, 2007) ("8 U.S.C. § 1571 provides a meaningful standard for the pace of adjudication of adjustment of status applications"). The Court finds this authority persuasive.

The third TRAC factor provides that delays are less tolerable when human health and welfare are at stake, as opposed to economic regulation. See Singh v. Still, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2006) (finding human health and welfare to be at stake in case involving delay of I-485 application to adjust status). Defendants characterize the prejudice to plaintiffs as mere inconvenience, and point out that plaintiffs each enjoy continuing lawful non-immigrant status and that each can continue to work in the United States and travel abroad. See Cross-Motion at 12. Defendants also emphasize that public safety concerns and the security interests of the nation require that the FBI be given sufficient time to perform accurate and thorough name checks.. Id. at 13. Plaintiffs contend that the delay has prevented them from being able to "plan or pursue a future course of action in the United States" and has required them to continually re-apply and pay for repeated extensions to their employment authorizations. Motion at 4; see also Singh, 470 F. Supp. 2d at 1070 ("Respondents' delay impacts Mr. Singh's ability to seek United States citizenship and all the rights and privileges attendant thereto.").

The fourth TRAC factor requires the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. Defendants argue that moving some individuals to the front of the queue would simply move that group ahead of others who

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                            -7-

also had been waiting, resulting in no net gain in processing.  See Cross-Motion at 13.
Defendants further argue that rewarding those who "cut in line" would "open the floodgates for immigration-related actions."  Id. at 14-15.

The sixth TRAC factor notes that the Court need not find any impropriety on the agency's part in order to hold that agency action is unreasonably delayed.  As discussed below, because the government has provided no particularized reason for the name-check delay as applied to plaintiffs, the Court without more, cannot assess this factor.

Overall, defendants have failed to put forth any facts specific to plaintiffs' name checks. "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."  Gelfer v. Chertoff, 2007 WL 902382 at *2 (N.D. Cal. Mar. 22, 2007) (citation omitted).  Courts within the Ninth Circuit in similar cases have denied Rule 12(b)(6) motions to dismiss brought by the Government where USCIS has simply pointed to the FBI's failure to complete the name check, and where there were no reasons why the application was "particularly troublesome."  Id. (more than two-year delay not reasonable as a matter of law); see also Konchitsky, 2007 WL 2070325 at *6 ("without a particularized explanation for the delay . . . more than two year delay of plaintiff's application [is] unreasonable as a matter of law"); Mazouchi v. Still, 2007 WL 2070324 at *5 (N.D. Cal. July 13, 2007) (same, as applied to four year delay); Liu v. Chertoff, 2007 WL 2023548 at *4 (E.D. Cal. July 11, 2007) (two-and-a-half year delay not reasonable as a matter of law, noting absence of "a more particular explanation by Defendants as to the cause of the delay," despite evidence of large volume of applications received and the extensive background checks required to process them); Qiu v. Chertoff, 2007 WL 1831130 at *3 (N.D. Cal. June 25, 2007) (no explanation, other than pending FBI name check, why application "stagnant" for three years); Huang, 2007 WL 1831105 at *2 (despite national security concerns and increased security checks since 9/11, a more than two-year delay is unreasonable as a matter of law if there is no

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                                    -8-

particular explanation as to the cause of the delay).

One case out of the Northern District of California granted summary judgment in favor of plaintiff, and ordered USCIS to complete the adjudication of the application, where USCIS failed to provide specific reasons for the delay. See Singh, 470 F. Supp. 2d at 1065, 1072 (noting the lack of specifics about "the issues requiring further inquiry" in declarations submitted by USCIS, and, alternatively, USCIS's failure to provide information via in camera review). In Singh, the Court stated that although "national security must be considered a competing priority of the highest order[,] . . . the mere invocation of national security is not enough to render agency delay reasonable per se." Id. at 1069.[4]

## IV.  CONCLUSION

For all of the foregoing reasons, the Court DEFERS plaintiff's "Motion for Summary Judgment" (Dkt. #10) and defendants' "Cross-Motion to Dismiss" (Dkt. #11) and ORDERS defendants to provide the Court with particularized information that explains the over two-and-a-half year delay as to plaintiff Sun's name check. Defendants shall submit this information to the Court, either through declarations or via in camera review, by **October 30, 2007**. Any brief filed in connection with the new information shall not exceed six pages. No response to the supplemental briefing shall be filed by plaintiffs unless requested by the Court. The Clerk of the Court is directed to note defendants' supplemental memorandum on the Court's docket for consideration on October 30, 2007. Defendants are on notice that the Court may sua sponte

---

[2] It is noteworthy, however, that, at the time summary judgment was granted in favor of Mr. Singh, Mr. Singh's FBI name check had been expedited as a result of the litigation and had cleared. Other distinguishing aspects of the Singh case are that: (1) Mr. Singh had waited seven years for adjudication, in comparison to plaintiffs' more than two-and-a-half years; (2) USCIS was partially to blame for the delay (in addition to the FBI) because USCIS had taken two-and-a-half years to initiate the name check with the FBI, and (3) Mr. Singh's application to adjust status was based in part on a grant of asylum, which meant that the government had an opportunity to raise national security concerns before an immigration law judge in the asylum proceedings. See Singh, 470 F. Supp. 2d at 1065, 1068-70.

ORDER DEFERRING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
TO DISMISS                                 -9-

1  grant summary judgment in favor of plaintiffs if defendants fail to provide the particularized
2  information.

4   DATED this 18th day of September, 2007.

   /s/ Robert S. Lasnik
   Robert S. Lasnik
   United States District Judge

26 ORDER DEFERRING PLAINTIFFS'
   MOTION FOR SUMMARY JUDGMENT
   AND DENYING DEFENDANTS' MOTION
   TO DISMISS                    -10-